Next case today, number 251115, United States v. Sadeq Ali Quraishi. Will counsel for appellant please introduce yourself on the record to begin. Good morning, your honors. Kelly Quinn on behalf of Sadeq Quraishi. I'd like to reserve two minutes for rebuttal. You may. This appeal raised three issues. Most importantly, whether Dr. Quraishi received a fair trial by impartial jurors. During the initial group questioning by the court, several potential jurors raised their card to questions that indicated some form of potential bias. During the individual questioning of the jurors, the defense moved to strike for cause four of the first seven jurors who had expressed some form of bias, mostly concerning sexual assault. Of these four jurors, the court struck two. Then during the discussion of juror seven, the defense argued that juror exhibited bias, focusing on the fact that the juror stated that she and her sisters had been the victims of sexual assault. Asked if it would prevent her from being fair, she says, quote, I would like to say no. During questioning, the court noted hesitation on her part. During this argument, the government then brought up its position on sexual assault. That position was, quote, unfortunately, sadly, sexual assault and sexual abuse is a reality and exists across a wide portion of the population and simply having that unfortunate experience is not a basis alone to strike her for cause. The district court accepted the government's argument and the motion to strike was denied. So the government argued that because there were so many potential jurors affected by the potential bias stemming from sexual assault, being a victim of sexual assault alone was not going to be sufficient. There needed to be sexual assault plus or bias plus something else. Firstly, the government's argument that the number was too great was disingenuous. The question concerning bias from sexual assault was not the most responded to question. Question 12 concerning the nature of the charges and question 9 concerning bias from the arrest or indictment were. However, it was very likely the question that would have invoked the most emotional response or created the most bias. Yet the government asked for it itself not to be considered as bias and that is how the court treated it. Here's the problem that would be helpful if you addressed. In virtually every trial, the voir dire focuses in at some point on finding out if each juror has some life experience that puts them in the shoes of one of the parties in the case in some way. That's common for all jurors. When the answer is yes, routinely in jury trials, the person is not struck. There's just further inquiry and the court determines whether notwithstanding that similarity, could the person be an unbiased juror? We review that determination with a great deal of preference, not having been there, not having seen the juror. What is different about this case? Absolutely, Your Honor. The question here is whether the district court abused its discretion and that requires there to be error in the judge reaching conclusion after weighing the relevant factors. So the key to exercising discretion is that the court weighed the relevant factors in determining that there was or was not biased. Let me ask it this way. Which juror would you point us to who the court clearly erred in finding the juror was not biased? I think there was several jurors. Well, pick your best one and then we could go from there. Of the jurors that remained on the jury in the end, we're looking at 40 and 42. And why do you say that they were necessarily biased in a way that the court erred? Juror 40 stated that she was the victim of an unprosecuted rape and she could barely speak about it in the courtroom. That was evidenced by her asking if she had to discuss her rape, quote, in front of these people. Even so, when responding to the questions about her assault, she was speaking so quietly that the defense noted they could not hear her responses. The district court even acknowledged it may have been one of the first times she had to share the facts of her rape with anyone. Instead of excusing her, the court asked her to separate her personal experiences from the case. Almost immediately thereafter came juror 42. He stated that he was affected by sexual abuse, that his nephew had been abused in the Big Brother program, that they couldn't do anything about it, and that he didn't find out about it until later. He also stated that he had been a music teacher for 35 years, and he admitted that when he heard of the allegation, he thought of his students. He was picturing the kids and hoping they wouldn't have to go through that, thinking about them being in eighth and ninth grade, picturing his kids, and also stated that there may be some factors, meaning appellant was brought here for, there's a reason he's here. You can really see how the district court did not properly weigh the relevant factors, and that it treated sexual abuse by potential jurors as something less than other showings of bias when you look at how the court treated sexual assault versus how the court treated the questions about prostitution. If a juror stated they had a feeling about prostitution that affected their perception, the court universally found that to be biased and struck the juror, even when the juror said they could be fair. That was not the same with the questions about sexual assault. There were 29 jurors who raised their card to the three-part question regarding sexual assault. Of those, 19 relayed some relationship to sexual assault, and the court did strike those jurors who were absolutely steadfast that they could not be impartial. However, there were nine jurors who were sexually assaulted or who were close to someone who was sexually assaulted. I don't know if you're answering Judge Catta's question. Is your position that the fact of being a victim of sexual assault required striking the juror as biased? No, Your Honor. I think our position is sort of the flip of that, and that is that the government took the position that when you had the first... But in the end, doesn't it matter what the district court did? Yeah. The district court went along with what the government said, and that is that sexual assault alone was not going to be biased. So the defense... And you're saying it alone is biased? No. We're not saying it alone is biased. We're saying the district court didn't properly weigh the factors because the district court went along with the government's position. After hearing the first seven jurors... Well, what was said, just in the exchange you had with Judge Catta describing what transpired as to Juror 40, what indicates to you that the district court didn't consider some factor that would have mandated us either to vacate or to actually strike that juror? The best way... Because you're not saying the fact that the juror experienced sexual assault or was raped is itself a reason they must be struck, right? No. I'm saying that the court... What was said in that exchange with Judge... I'm sorry. I'm saying simply that the court was not weighing that factor the way it was weighing every other factor of bias. Maybe so, but what did it do wrong in weighing it that would enable us to say that there was error? And I think we can see that most when we look at Juror 38, which was a juror in which the defense did move to strike. Can we just, so I understand, is there something in what happened with Juror 40 that was wrong? Yes, that she was exhibiting a bias and the court didn't strike her. What indicates the bias in that thing? It's not the fact of the rape... It's not only the fact of the rape. It's also her demeanor, her unwillingness to... And we're supposed to second guess the district court's judgment that what she heard was not enough to strike that juror. Yes, because you can see not just from 40 and 42, but also from 38 and also from the other jurors that the court went along with the government's take that sexual assault shouldn't be a reason to strike a juror, shouldn't be a factor. It was not weighing that factor the same as it was weighing other factors, other indicia of bias. It was weighing that factor as something less than the other indicias of bias. Suppose we disagreed with you and we thought on this record you could not infer that the district court's rationale for not striking these jurors was that sexual assault can never be a relevant consideration in bias in such a case. Suppose we didn't think that you could have inferred that was the district court's rationale. Are you saying the district court still erred? Yes, I'm saying the district court still erred, but I am saying the record is replete with the fact that the district court was treating sexual assault per the request of the government as something lesser than other forms of bias. Got it. Okay. Could you just address quickly the, am I right, there was a jury instruction that you're objecting to because of the use of the word improper, am I right or wrong? That was one of the reasons, yes, that the court inserted a second improperly in the  And do you want to just say anything about that before you sit down? Yeah. The only thing that I did want to note about that is the government brought up that the defense had waived that issue because they didn't object at the time. And I think the record is clear, as we've stated in our briefing, that the trial counsel stated that they weren't objecting if the court was giving the standard instruction and the court did not give the standard instruction. Because of the use of the word improper? Because they, he, I'm sorry, the court inserted a second improperly into that instruction. Thank you. Thank you. Counsel, attorney for the appellee, please come up and introduce yourself on the record to begin. Good morning. Donald Lockhart for the government and may it please the court, I'll take the instruction issue first and then backtrack. On the instruction issue, the defense proposed instructions included the word improper before inducement. The defendant never disagreed that the concept we're talking about here is improper inducement. The district court at a certain point said, by the way, I'm going to include a second instance of improper at the start of my entrapment instructions. And there was no objection from the defense to that inclusion of a second instance of the word improper. So our position is the defense embraced the idea that the inducement had to be improper. Therefore, we have waiver. At best, we have forfeiture because there was no objection when the judge specifically said I am going to include this second instance of the word. There's no attempt either in the opening brief or the reply brief to satisfy the plain error standard. So we have a PABON waiver and on the merits, there's just nothing wrong with the instruction to begin with. Just help me with that last point. Why is that? Because, I mean, first of all, that is the language that is used for these instructions. It's sort of vintage, classic language that you will find in the First Circuit pattern instructions and elsewhere. It's given every day of the week. The idea of improper is sort of, I think in this context, a sort of shorthand word for incorporating other ideas in entrapment such as the improper inducement by a law enforcement officer, meaning undue pressure, etc., etc. So improper sort of is a catch-all term that incorporates those ideas. In other words, inducement alone is never thought to be itself enough. It's got to be inducement in some circumstance and improper is just the catch-all term to capture that. That's right. That's right. And the judge goes on to explain examples of what sorts of inducements are improper, undue pressure, whatever. It bears noting parenthetically that there was no basis for an entrapment defense here and there was no entrapment defense ever asserted in this case. The defendant got an entrapment instruction that he requested, but then never pursued that defense. Instead, pursued a straight-up rescue defense, which embraced the idea that he knew full well that these two girls were 14 and 12 and he just set out to rescue them. I'd just say the only thing that concerns me about it, since persuasion can count, improper inducement doesn't, that word persuasion doesn't leap to mind as improper. So it just seems like a potentially confusing way of describing the test. Well, unless you look at the instructions in their totality. Did it say that later in the instructions? Well, later in the instructions, the court expands on what it, essentially on what it means by improper. By explaining here are the types of police action that would qualify as that. Turning to jurors 40 and 41, those claims are both waived because in each instance, the district court judge, after conducting a careful voir dire of each juror, turned to defense counsel and said, is there any cause challenge here? And the defense attorney said, no, in each instance. So the two most touted examples here at argument of the best examples for the defense, 40 and 41, are outright waived. I mean, the defense attorney expressly declined to move on a four-cause basis to strike those jurors. Did they argue futility, I think? There's a reply brief suggestion about alleged futility, which I would like to address. Did they move to strike anybody after that on this basis? They did. So here's the sequence of events in the record, which undermines the futility exception raised in the reply brief. There's a challenge initially to jurors 3 and 7. It's unsuccessful. Then the next thing that happens is that the defense attorney declines to challenge jurors 20 and 21. Then he does try to challenge 38. Then he declines to challenge 40 and 42, the two we've been talking about. Then he moves to strike juror 45. And then he finally declines to challenge juror 71. So you can see in the sequence of the events here that this is not a situation where the defense attorney just gave up the ghost. He exercised four-cause strike challenges on a discriminating basis, first in the case of some jurors, then not in others. Was 45 or 71 based on sexual assault being the ground for the strike? I'm sorry, which number? Was either 45 or 71, the two that post-state the 40 and 42, jurors, were either of those grounds for striking grounds that related to the juror having been a victim of sexual assault? Forty-five. Just a second. No. Well, no. So 45, if you look at pages 17 and 18 of the red brief, it does not appear that 45 testified concerning any prior sexual... So how does that undermine the futility argument? Well, because... If the argument is, look, I know what the rationale of the district court is, and that district court's never going to strike someone based on sexual assault, then if they say it just became futile to keep objecting on that ground, the fact that they subsequently objected on other grounds doesn't tell you that, therefore, that their futility argument's  Well, I think with respect to 45 and 71, there was an argument that the district court was There is sexual conduct being discussed by those two jurors. It's just not their own prior sexual experience. They're talking about the graphic nature of the allegations in this case as potentially being distracting to them. So it's not as though there's no sexual-related stuff going on with those two prospective jurors. It's just a case that they don't apparently have a personal experience themselves or close family members with a sexual assault. But the idea that somehow the defense attorney intuited that the district court had set up this sort of categorical rule is one that we, you know, find no support for in the record. Mr. Lockhart, hadn't the court already struck some jurors for having determined they couldn't be unbiased based on their prior experience and their testimony on voir dire? Yes, two of them. Jurors two, and I forget the number of the other one. So one very early juror, two, and then a second juror struck on the basis that after approving inquiry, the judge felt that they couldn't set aside that experience and be unbiased. Just out of curiosity, does the government agree with the characterization of the government's position during voir dire as being that sexual assault was not a relevant factor? No, no. I think what our position was, was that the mere fact that a prospective juror either was sexually assaulted themselves or has a close family member who was, cannot in and of itself be a ground for a cause, forecaused strike, for the obvious reason that if it were, I mean, tragically, a lot of people have that sort of experience in their own lives, and we would be eliminating a large group of prospective jurors. We actually thought that the opening brief was trying to make a sort of implied waiver argument that sort of runs in the opposite direction to the effect that whenever a prospective juror has such an experience which parallels to some extent the alleged trial facts, that that person automatically has to be excluded under an implied waiver theory. The defense reply brief clarifies now that that's not the argument that they're making at all. If that was the argument they were making in the opening brief, they've withdrawn it. But I think to your point, we were just trying to make an implied waiver response argument on that point. Thank you. Yep. Thank you, Counsel. Well, Attorney for Appellant, please come up and reintroduce yourself on the record. You have a two-minute rebuttal. Kelly Quinn on behalf of Sadiq Qureshi. I would like to start with a little bit of a discussion about these early jurors. The government is pointing to the fact that the court struck two of the first seven jurors at the request of the defense, and the defense was moving to strike the early jurors. The defense moved to strike four of the first seven jurors. But that goes more towards the defense's argument, appellant's argument. It was that the defense was moving to strike all of the jurors at the beginning, and then the government brings up its argument that because sexual abuse and sexual assault is so prevalent, quote, simply having that unfortunate experience is not a basis to strike for cause. That was the government's argument. And then after that, the defense stopped moving to strike based on that alone. But you can see the futility, particularly when you look at Juror 38, which was the next time that the defense moved to strike based on a sexual assault allegation. There the juror was recounting the sexual assault of his two daughters. During that conversation he became very emotional. His eyes are swelling. He's talking about the age of his daughters being around 14, being very young. He's not really able to discuss it. He also says he's very pro-law enforcement. He says he thinks the indictment means something. Even though the court, the prosecutor, and the defense all comment on how difficult this is, how much this guy says this brings up a lot of things to him, the court still refuses to strike this juror. And it's on the heels of this action by the court in refusing to strike this based on discussions of sexual assault that we get Jurors 40 and 42. So based on that, we would argue that it would be futile for the defense to do any more than they did.